SM

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RECEIVED

Angela M. Orokoh
_____
_____
(Name of the plaintiff or plaintiffs)

v.

National Louis University
_____
_____
(Name of the defendant or defendants)

CIVIL ACTION

NO.

JUL 23 2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**1:21-cv-03916**
**Judge John J. Tharp, Jr**
**Magistrate Judge Sunil R. Harjani**
**RANDOM**

## COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is   ANGELA  OROKOH   of the county of
   COOK   in the state of   ILLINOIS   .

3. The defendant is   National Louis University   , whose street address
   is   122  S  Michigan  Ave   ,
   (city) Chicago   (county) Cook   (state) Illinois   (ZIP) 60603
   (Defendant's telephone number)   (312) –  261 - 3333   

II The plaintiff sought employment or was employed by the defendant at (street address)
   122 S Michigan Ave   (city)   Chicago   
   (county) Cook   (state) IL   (ZIP code) 60603   

5. The plaintiff [*check one box*]
   (a) ☐   was denied employment by the defendant.
   (b) ☐   was hired and is still employed by the defendant.
   (c) ☒   was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about,
   (month)   11   , (day)  06   , (year)  2019   .

7.1    ***(Choose paragraph 7.1 or 7.2, do NOT complete both.)***

    (a)  The defendant is not a federal governmental agency, and the plaintiff   [*check one box*]

    ☐ has not  ☒ has filed a charge or charges against the defendant asserting the acts of

discrimination indicated in this complaint with any of the following government agencies:

(i)    ☒ the United States Equal Employment Opportunity Commission, on or about
(month) __March__ (day) __22__ (year) __2020__.

(ii)    ☐ the Illinois Department of Human Rights, on or about
(month)_____ (day)_____ (year)_____.

(b)  If charges *were* filed with an agency indicated above, a copy of the charge is ttached.  ☒ YES. ☐ NO,

**but plaintiff will file a copy of the charge within 14 days**.
It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human
Rights to cross-file with the other agency all charges received.  The plaintiff has no reason  to believe that this
policy was not followed in this case.

7.2    The defendant is a federal governmental agency, and
(a) the plaintiff previously filed a Complaint of Employment Discrimination with the defendant asserting
the acts of discrimination indicated in this court complaint.

    ☐  Yes (month)_____ (day)_____ (year) _____

    ☐  No, did not file Complaint of Employment Discrimination

2.    The plaintiff received a Final Agency Decision on (month)_____
(day) _____ (year) _____.

c.    Attached is a copy of the

    a.  Complaint of Employment Discrimination,

      ☐ YES     ☐ NO, but a copy will be filed within 14 days.

(ii)    Final Agency Decision

      ☐ YES     ☐ NO, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

(a)☐ the United States Equal Employment Opportunity Commission has not issued a *Notice of Right to Sue.*

(b)☒ the United States Equal Employment Opportunity Commission has issued a *Notice of Right to Sue*, which was received by the plaintiff on (month) April (day) 26 (year) 2021 a copy of which *Notice* is attached to this complaint.

9.   The defendant discriminated against the plaintiff because of the plaintiff's [*check only those that apply*]:

(a)☐ Age (Age Discrimination Employment Act).

(b)☐ Color (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(c)☐ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d)☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e)☒ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f)☐ Religion (Title VII of the Civil Rights Act of 1964)

(g)☒ Sex (Title VII of the Civil Rights Act of 1964)

10.  If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.  Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the A.D.E.A. by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791.

12.  The defendant [*check only those that apply*]

(a)☐ failed to hire the plaintiff.

(b)☐ terminated the plaintiff's employment.

(c)☐ failed to promote the plaintiff.

(d)☐ failed to reasonably accommodate the plaintiff's religion.

(e)☐ failed to reasonably accommodate the plaintiff's disabilities.

(f)☒ failed to stop harassment;

(g)☒ retaliated against the plaintiff because the plaintiff did something to assert rights protected by the laws identified in paragraphs 9 and 10 above;

(h)☐ other (specify):_____

_____

_____

_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

During my employment, I was subjected to discriminatory harassment that included, but no limited to racial and sexual epithets, comments and slurs. I complained several times and was subsequently discharged.

14. **[AGE DISCRIMINATION ONLY]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☐ YES ☒ NO

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

(a) ☐ Direct the defendant to hire the plaintiff.

(b) ☐ Direct the defendant to re-employ the plaintiff.

(c) ☐ Direct the defendant to promote the plaintiff.

(d) ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

(e) ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

(f) ☐ Direct the defendant to (specify): _____

_____

_____

_____

_____

(g) ☒ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☒ Grant such other relief as the Court may find appropriate.

_____

Plaintiff's signature

Angela OROKOH

Plaintiff's name

Plaintiff's street address     7356 S. Colts Ave G7

City  Chicago     State  IL     ZIP  60647

Plaintiff's telephone number   414-627-6223

Date:   7/23/2021

Angela M. Orokoh )
Plaintiff )
)
)
)
) United States District Court
V. ) Northern District of Illinois
)
)
)
National Louis University )
Defendant )
)
)
)

## COMPLAINT

---

## I.   Introduction

1. Plaintiff Mrs. Angela Orokoh brings forth this action pursuant to the Title VII of the United States Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq to remedy acts of discriminatory harassment and retaliation perpetrated against her by Defendant National Louis University and associative affiliates. Plaintiff is seeking monetary damages against defendants for employment practices that violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.

2. Plaintiff contends that she was subject to pervasive acts of harassment, much of which was saturated in discriminatory comments from coworkers that were orchestrated objectively and subjectively interfering with work objectives and creating an abusive as well as intimidating work environment. Mrs. Orokoh was subject to continuous derogatory comments, slurs, jokes and epithets that were targeted at her race, identity, gender, ethnicity and culture.

3. Angela Orokoh is a female, African American and was employed with National Louis University as an Outreach and Enrollment specialist in the Department of Outreach and Enrollment.

4. Angela Orokoh is a victim of extrajudicial government surveillance, organized group stalking, and systemic harassment which have no official or legitimate investigative purpose. A person who is victim of such surveillance program organized by government security personnel et al., is subject to intense long term psychological torture orchestrated in a manner to create the least amount of objective evidence as possible. As a result, in working for National Louis University, co-workers and other university affiliates became designated participants through which harassment techniques and group harassment methodologies would be deployed against Mrs. Orokoh. Such activities included but were not limited to: racially offensive and sexually obscene language, epithets and name-calling towards Mrs. Orokoh, sabotaging Mrs. Orokoh's work performance by withholding information in an attempt to prevent her from conducting job duties accurately, providing false grievances to higher ups in an attempt to have Mrs. Orokoh disciplined, false conspiratorial remarks against Mrs. Orokoh's perceived political association, and verbal attacks against Mrs. Orokoh's racial and sexual association.

5. Mrs. Orokoh made several institutional complaints to her supervisor as well as Human Resources about the discriminatory harassment that was taking place throughout the university. When Mrs. Orokoh made several institution complaints, many of which went unanswered, she was subsequently terminated from her position December 19, 2019.

## II.    Jurisdiction

6.  This court has jurisdiction over the subject matter of this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.

7.  Venue is proper because Defendant is a municipal corporation with its principal office in this judicial district.

## III.    Statement of Facts

8.  Plaintiff Mrs. Angela M. Orokoh, Black female, was an employee of National Louis University as an Outreach and Enrollment specialist. Mrs. Orokoh was officially offered the position on November 5, 2019. Mrs. Orokoh officially began the position on November 11, 2019.

9.  In the capacity of an Outreach and Enrollment specialist, Orokoh's job duties entailed representing, promoting and recruiting for National Louis's University undergraduate program. In doing so, Orokoh represented National Louis University when speaking to various Chicago Public Schools on the campus of National Louis University and at various school sites throughout Chicago Public Schools.

10. Employees within complainant's department included, Serah Fatani, the Director of Enrollment and Strategic Growth. Alison Perez, Associate Director of Undergraduate Partnerships, Michelle Peterson Enrollment Operations Manager, Shae'Von Huerta Outreach and Enrollment Specialist, Rebecca Laird Outreach and Enrollment Specialist, Jeanette Perez, Outreach and Enrollment Specialist, Student Ambassadors: Samuel Cisneros, Omar Hernandez, Eric Maldonado, Omar De La Torre, Diana Moreno, Devine Drakes, Meghan Harris, and Ruth Anderson. All aforementioned employees were complicit in harassment activities in some degree or another orchestrated against Mrs. Orokoh.

11. On December 19, 2019, Mrs. Orokoh was informed that her employment with defendants was being terminated without any explanation. When Mrs. Orokoh asked for an explanation of her termination, she was told that Illinois was an "at-will state" and the University did not need to provide an explanation. Prior to Mrs. Orokoh's termination from employment, she had made several institutional complaints, on November 16, 2019, On November 22, 2019, On November 26,

3

2019, On December 4, 2019, On December 11, 2019, and on December 17, 2019, of pervasive harassment from employees which was saturated in racial and sexual epithets. All complaints, with the exception of one went unanswered.

12. Mrs. Orokoh is a member of the class of females and African American, protected by the civil rights laws referenced herein.

13. On Saturday November 16, 2019, Mrs. Orokoh was assigned to work an event on campus called "Eagle Day." Mrs. Orokoh was assigned by Serah Fatani and Allison Perez to work in the "Admit Room" where Orokoh's job was to review student applicant's transcripts. This included inputting information into the university's salesforce system.

14. Assigned to the same room were employees Michele Peterson and Devine Drakes. Mrs. Orokoh, who had been on the job for four days up until this point, and had no prior training in salesforce, asked both Peterson and Drakes for assistance on using salesforce. Drakes and Peterson deliberately ignored Mrs. Orokoh's request for help. When Mrs. Orokoh asked Drakes directly, Drakes informed Mrs. Orokoh that she did not know how to work salesforce and therefore could not help her. Peterson never responded to Orokoh at all.

15. Supervisor Fatani arrived to the "Admit Room" to ask Mrs. Orokoh how her progress was going on the assignment. Mrs. Orokoh informed Fatani that she was having trouble inputting information into salesforce. Fatani stated that Drakes could assist Mrs. Orokoh with salesforce. Mrs. Orokoh informed Fatani that Drakes had told her that she did not know how to use salesforce and therefore could not assist Mrs. Orokoh. Fatani stated that Drakes did know how to utilize salesforce, and in that instance, Drakes retracted her statement in front of Fatani and stated that she did know how to work salesforce.

16. Fatani then instructed Mrs. Orokoh to go and assist with the college majors room.

17. When assisting in the college majors room, Mrs. Orokoh was instructed by Alison Perez to go and assist Samuel Cisneros and Omar De La Torre to retrieve materials in the Outreach and Enrollment office. Mrs. Orokoh had just recently posted an article to her Facebook page about looted artwork stolen from Africa being returned from France.

18. Shortly after, Samuel Cisneros approached Mrs. Orokoh striking up a conversation. Cisneros states, "Hey Angela, I am going to rob an art museum" Mrs. Orokoh

4

responds and asked Cisneros, "Why would you do something like that?" Cisneros replies, "that is what you do, rob art museums" Orokoh ignores Cisneros comments and proceed to obtain the materials. Cisneros again engages Mrs. Orokoh in conversation by stating, "Hey Angela, what is your name?" Mrs. Orokoh responds and states, "You just called my name." Cisneros then asks, "Can I call you Angie?" Mrs. Orokoh tells Cisneros that "typically only close friends and family call me Angie, but you could do so if you would like too." Cisneros then proceeds to state, "that name is so unprofessional, and you are ghetto."

19. Mrs. Orokoh immediately tells Cisneros that what he stated was inappropriate and that he should not make such comments in the workplace.

20. Mrs. Orokoh immediately reported the conduct from Cisneros as well as other co-workers blatantly ignoring her request for help to her direct supervisor Director of Enrollment and Strategic Growth Serah Fatani. Fatani did not address the complaint and no subsequent actions were taken on behalf of the department as it relates to the inappropriate conduct from co-workers that occurred on November 16, 2019.

21. The discriminatory harassment towards Mrs. Orokoh continued feverishly around the office. Mrs. Orokoh shared an office space with co-worker Rebecca Larid, where co-workers would come into the office and repeatedly make offensive comments towards Mrs. Orokoh in conversation with Rebecca Laird.

22. On several occasions, Mrs. Orokoh was called whores, ridiculed for being a Black Human Rights activist, told she has bad hair, subjected to sexually suggested statements and accusations, and on several occasions when Mrs. Orokoh went to visit the lactation room, Omar Hernandez and Omar De La Torre would state: "Angela is going to pump, pump, pump it up."

23. On November 20, 2019, Mrs. Orokoh began to research how to report workplace harassment. Mrs. Orokoh was advised to tell the harassers to stop engaging in the harassment. Mrs. Orokoh told Laird and Perez who were in the office participating in harassment to stop harassing her. Both co-workers simply responded "ok"

24. On November 22, 2019, Mrs. Orokoh reported the pervasive harassment to Human Resources. Tiffany Krieder, Associate Director of Employee Relations and Development of Human Resources scheduled a meeting with Mrs. Orokoh to discuss what was occurring around the university. This meeting was scheduled to happen on November 26, 2019.

5

25. On Tuesday November 26, 2019, Mrs. Orokoh met with Krieder to discuss the nature of the harassment. Mrs. Orokoh provided Krieder with a printed list of discriminatory harassment statements that were made towards Mrs. Orokoh in addition to informing Krieder of who, what, when and where it happened.

26. During this meeting Mrs. Orokoh also disclosed to Krieder that she was what is known within the community as a "targeted individual" where she is subject to extrajudicial harassment and psychological torture from what she believes to be some form of U. S. security personnel. Mrs. Orokoh informed Krieder that the nature of the harassment conducted by employees was conducted in a manner that fits the narrative of targeted individuals. Mrs. Orokoh informed Krieder that the harassment techniques practiced by employees had been scripted, rehearsed, both subtle and outright. And in doing so, the harassment was often clothed in outright racist and sexist verbiage directed at Mrs. Orokoh along with frequent inappropriate conversations and epithets within Mrs. Orokoh's vicinity.

27. Mrs. Orokoh shared documents with Krieder that could help her understand the nature of group targeting and group harassment. This included affidavits from whistleblowers in the National Security Agency and a former employee in the Federal Bureau of Investigation. Krieder was also provided with a letter endorsed by several attorneys and medical professionals who warned about discrediting, ignoring, and misdiagnosing grievances from citizens who claim to be "targeted individuals." Krieder was also provided her affidavits from other citizens who were making similar claims of targeted harassment in the workplace as a form of extrajudicial treatment and torture.

28. Krieder informed Mrs. Orokoh that an investigation would take place.

29. After the complaint to Human Resources, the discriminatory harassment continued, becoming more pervasive and escalating to threats of physical harm.

30. On December 4, 2019, Shae'Von Huerta stated to Mrs. Orokoh unprovoked, "Angela not everybody's out to get you, you will be ok big hug. Who-oo Angela's going to die, your dying. Wait I thought you said she was dying"

31. On December 4, 2019, Omar Hernandez states to Mrs. Orokoh, "Angela, you are Al Sharpton. Angela has bad hair, she has bad hearing too."

32. On December 4, 2019, Michele Peterson in conversation with Shae'Von Huerta states, "Yes Angela's facebook marriage doesn't count. Do you pay her bills, did you sleep with Angela too?" (both laughs loudly)

33. December 11, 2019 Mrs. Orokoh
reported continued harassment to supervisor Serah Fatani. She emailed Fatani about her grievances; however, Fatani did not respond.

34. On December 12, 2019, Fatani instructed Mrs. Orokoh to return to the office to meet to prepare for an on-campus event that was scheduled on December 13, 2019. Fatani however ambushed Mrs. Orokoh with an impromptu meeting with the Dean of Undergraduate College Aarti Dhupelia, Serah Fatani and Tiffany Kreiger. Mrs. Orokoh was spoken to about alleged and false reports of conduct that had been stated about Mrs. Orokoh. Mrs. Orokoh denied the false accusations made against her. Mrs. Orokoh used this meeting to again raise concerns about the continued existence of the hostile work environment. Mrs. Orokoh was told that this meeting was about her and she was made to sign an expectations document. Mrs. Orokoh signed the document and made clear that she disagreed with line 4 of the document which stated to an extent, that Mrs. Orokoh will not make loud outburst, had never occurred.

35. Following the meeting, Fatani never met with Mrs. Orokoh to prepare for the event that was occuring the next day as previously prompted Mrs. Orokoh's return to the office. Fatani instead told Mrs. Orokoh to look at the Google doc sent out to all the staff to see where Mrs. Orokoh would be placed. When looking at the Google doc, Mrs. Orokoh noticed that she was the only staff member that was not placed on an assignment.

36. On this same day, When asking other employees, (Meghan Harris and Ruth Anderson) if there was any assistance needed, the employees outright ignored Mrs. Orokoh. When Mrs. Orokoh walked away and asked employee Rebecca Laird was there anything she could help assist her with for the event occurring December 13, 2019, Mrs. Rebecca replied, "Angela you're a mocha Frappuccino with a whip." On this same day, when walking pass Devine Drakes, Drakes referred to Mrs. Orokoh as a THOT (a slang word for That Hoe Over There)

37. On December 17, 2019, Mrs. Orokoh met with HR personnel Tiffany Kreider and Holly Buttaglia. This meeting was scheduled and honored as a follow up to discuss the original complaints made to Kreider which Mrs. Orokoh reported on November 26, 2019. Kreider informed Mrs. Orokoh that an investigation had took place and that

she could not disclose what happened as a result. Kreider stated that she could only tell Orokoh that an investigation had taken place; however no updates or details were given. Mrs. Orokoh informed Kreider that the harassment had continued despite the investigations. A lot of the harassment continued to be in the form of discriminatory harassment that were both racialzed and sexual. Mrs. Orokoh informed Kreider that the harassment had also escalated to epithets of threats of violence and physical harm. Krieger and Battaglia stated that Mrs. Orokoh must provide the information about the threats of violence immediately, in addition explain the incidents of harassment.

38. Mrs. Orokoh informed HR of the raw notes she had kept to document and would need to refer to the notes to provide a detailed synopsis.

39. Kreider and Buttaglia told Mrs. Orokoh they could not wait for that and I had to tell them at that moment. I told them due to the nature and conveyance of the harassment, happening multiple times and through multiple instances, , it would take some time to write out.

40. Mrs. Orokoh  provided a synopsis on the nature of the harassment and how it was occuring around the university on December 18, 2019 which included Mrs. Orokoh's  raw journal of notes. Mrs. Orokoh told Kreider that the information was not conclusive and that she would need to provide details to what was being sent, in addition to how it had materialized and played out towards me in the office and throughout the university. Mrs. Orokoh requested a meeting for a follow up.

41. Mrs. Orokoh was never provided the opportunity to go over in detail the nature of the continued harassment.

42. Mrs. Orokoh was sent a meeting request for December 19, 2019 from Tiffany Kreider. During this meeting, Mrs. Orokoh was joined by Kreider and Duphelia. Duphelia informed Orokoh that her position was being terminated with National Louis University. After Duphuleia stated this, she immediately left the room without providing an explanation. When Mrs. Orokoh asked for an explanation, Kreider, who remained in the room, told Mrs. Orokoh that Illinois was an at-will state and that they were not required to provide an explanation.

43. Rather than respond to Mrs. Orokoh's complaints of discriminatory harassment, Mrs. Orokoh was instead terminated from National Louis University.

Case: 1:21-cv-03916 Document #: 1 Filed: 07/23/21 Page 14 of 19 PageID #:14

## IV.    Notice of Right to Sue

44. On or about March 22, 2020, Mrs, Orokoh filed a charge of race and sex
discrimination and retaliation with the Equal Employment Opportunity Commissiion
(EEOC) Charge No. 440-2020-03741. All allegations contained in these charges are
hereby incorporated in this Complaint by reference. Plaintiff received a Notice of
Right to Sue from the EEOC on April, 26 2021. This lawsuit has been commenced
within 90 days of receipt of Notice of Right to Sue.

## V.    Count One

### (Racial and Sexual Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 USC 2000e. et seq.)

45. The foregoing paragraphs are realleged and incorporated by reference herein.
46. The Defendant's conduct as alleged at length herein constitutes discrimination based
on race in violation of Title VII. The stated reasons and lack thereof for the
Defendant's conduct were not the true reasons, but instead were pretext to hide the
Defendant's discriminatory animus.

## VI.    Count Two
### (Reprisal for Engaging in Protected Activity)

47. The foregoing paragraphs are realleged 'and incorporated by reference herein.
48. The Defendant's conduct as alleged above constitutes retaliation against the Plaintiff
because she engaged in activities protected by Title VII. The Defendants conduct
and lack thereof were the pretext to hide Defendants retaliatory animus.

## VII.    Count Three
## (Hostile and Abusive Working Environment)

49. The foregoing paragraphs are realleged and incorporated by reference herein.

50. The Defendant's conduct as alleged above constitutes hostile and abusive working environment in violation of Title VII.

## VIII.  Prayer for Relief

51. Mrs. Orokoh have been made to suffer from loss of employment, income, benefits, and job security as the direct and proximate result of the violation of her civil rights. Mrs. Orokoh have been made to suffer mental anguish, psychological damage, pain, suffering, embarrassment, and humiliation as a direct and proximate result of the violation of her civil rights as alleged herein. Further, plaintiff is reasonably likely to suffer these damages in the future. Plaintiff seeks all applicable rights and remedies including, but not limited to, recovery from actual damages, compensatory damages, punitive damages, interest, costs, fees and disbursements.

52. The plaintiff requests the court awards her $400,000 in damages suffered because of discrimination, retaliation and subsequent damages herein.

## IX.  Jury Demand

53. The plaintiff does not request trial by jury.

Dated: July 23, 2019

Respectfully Submitted

Angela M. Orokoh, Pro Se

7356 S Coles Ave G

Chicago, IL 60649

Tel. 414-627-6223

10

EEOC Form 161 (11/2020)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: **Angela Orokoh**
    **7356 S. Coles Ave, Unit G**
    **Chicago, IL 60649**

From: **Chicago District Office**
      **230 S. Dearborn**
      **Suite 1866**
      **Chicago, IL 60604**

| | |
|---|---|
| [ ] | *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))* |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2020-03741** | **Fatima Sandoval, Investigator** | **(312) 872-9682** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman/np*                      4/26/2021

Enclosures(s)                    **Julianne Bowman,**              *(Date Issued)*
                                 **District Director**

cc:  **NATIONAL LOUIS UNIVERSITY**
     **c/o Robert T. Zielinski**
     **Miller, Canfield, Paddock & Stone**
     **225 W. Washington Street, Suite 2600**
     **Chicago, IL 60606**

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you receive this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was issued** to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

Enclosures(s)

cc: **Robert T. Zielinski**
**Miller, Canfield, Paddock & Stone**
**225 W. Washington Street**
**Suite 2600**
**Chicago, IL 60606**